AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

CELLULAR TELEPHONE ASSIGNED CALL NUMBER (937)238-9353, WITH INTERNATIONAL MOBILE SUBSCRIBER NUMBER 310150823650412

Case No. 3:16mj322

SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute controlled substances |
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |
| 21 USC s. 843(b) | use of telephone communication facility |

The application is based on these facts:

See Attached Affidavit of Jason Via

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason Via, TFO of the DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-3-16

*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, Chief US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE ASSIGNED CALL NUMBER (937)238-9353, WITH INTERNATIONAL MOBILE SUBSCRIBER NUMBER 310150823650412 | Case No. 3:16 mj 322 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jason Via, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call number (937)238-9353, with International Mobile Subscriber Identity ("IMSI") number 310150823650412, placed in the subscriber name of "Lizbeth Ruiz" with an address of 1625 Mack Avenue, Dayton, Ohio, hereinafter referred to as "**Target Telephone**," whose service provider is AT&T, a wireless telephone service provider. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration ("DEA") within the meaning of Title 21, United States Code, Section 878 -- that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 878. Affiant has been employed as a Police Officer with the City of Springfield Police Division since November 2003 and has been assigned as a Detective in the Narcotics Unit since April 2009. Affiant has been employed in this capacity and worked at the DEA office in

Dayton, Ohio since August 2012. Since the time of Affiant's assignment with the DEA, and during time spent as a Springfield Detective, Affiant has been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance in drug trafficking investigations of an international scope. Through training and experience, Affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. Drug traffickers usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841; and 21 U.S.C. § 843(b) have been committed, are being committed, and will be committed. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

1. It is Affiant's belief that the **Target Telephone**, as described above, is being utilized by a member of a Dayton Ohio drug trafficking organization with ties to Mexico. Affiant and other DEA investigators have been investigating a heroin distribution organization operating in Dayton, Ohio. Affiant is aware through information obtained from confidential sources, cooperating defendants, as well as phone tolls for phones in the United States and Mexico that the MORENO-Mendoza family, including Jorge MORENO-Mendoza (hereinafter "JORGE") and Oscar Alejandro MORENO-Mendoza, also known as "Alex", (hereinafter "OSCAR"), are sending internal heroin couriers to the United States, including the Southern District of Ohio.

2. During a separate investigation in 2010 through 2012, Affiant interviewed over a dozen heroin couriers who identified both JORGE and OSCAR as running a sophisticated drug organization that sent individuals to the United States who internally carried bulk quantities of heroin within their body. Due to federal arrests of couriers as well as local customers in Dayton, Ohio, federal authorities partially disrupted the organization. However, within the past year, the organization appears to have reconstituted; in particular, DEA has arrested in Dayton, Ohio and Orlando, Florida internal body carriers linked to the organization. A number of these arrestees have cooperated with authorities and confirmed that OSCAR and JORGE sent them to the United States to deliver heroin to individuals in this country.

3. On or about August 5, 2016, Affiant is aware that law enforcement arrested in or around Dayton, Ohio a group of individuals who were involved in the internal body carrying of heroin from Mexico to southern Ohio. One of these individuals, hereinafter referred to as CD1,

provided information to law enforcement that federal agents have deemed reliable. CD1 told investigators that he/she was assisting with the sale of the heroin and, in doing so, was working with Lizabeth Morozco also known as Lizabeth Ruiz ("RUIZ"). Affiant knows RUIZ to be the daughter of Celia Ruiz, a drug trafficker currently serving a lengthy federal prison sentence on a drug trafficking case that arose in Dayton, Ohio. CD1 stated that RUIZ was finding individuals in the Dayton, Ohio area who wanted to purchase heroin from people that RUIZ knew in in Uruapan, Mexico. CD1 indicated that RUIZ resided at 1625 Mack Street, Dayton, Ohio. CD1 and used cellular telephone 513-557-1998. Agents were able to confirm that this telephone number was subscribed to by Lizabeth Ruiz with the address 1625 Mack Street, Dayton, Ohio.

4. Affiant is aware that, on or about October 15, 2016, the Montgomery County Bulk Currency Task Force arrested in the Dayton, Ohio area a suspected heroin courier who was discovered with heroin pellets that he/she had expelled from his/her system. This courier (hereinafter referred to as "Cooperating Defendant" or "CD2") gave statements to authorities that proved consistent with information gathered from previous couriers. According to the CD2, he/she had made several trips from Mexico to the United States with heroin pellets internally secreted within his/her body. CD2 explained that he/she swallowed the heroin pellets in Mexico, crossed the border into the United States, and then flew to a city to deliver the heroin. CD2 indicated that he/she was working for a person called "Alex" (believed to be OSCAR).

5. CD2 was able to place a recorded call to the user of cellular telephone 415-595-1276 – an individual whom CD2 identified as a person to whom CD2 had delivered heroin recently. During this recorded call, CD2 and the user of cellular telephone 415-595-1276, in fact,

discussed heroin that CD2 recently had given this individual. Affiant has conducted a toll analysis of this 415-595-1276 cell phone and found that, during the time period of October 16, 2016 to October 21, 2016, the 415-595-1276 cell phone has had contact with the **Target Telephone** 44 times. The Target Telephone is subscribed to Lizabeth RUIZ with the address of 1625 Mack Street, Dayton, Ohio.

6. In summary, Affiant believes the **Target Telephone** is currently used by RUIZ and is in contact with cellular telephone 415-595-1276. Based on the recorded call to the 415-595-1276 phone, Affiant believes that the user of that number recently received approximately 400 grams of heroin from the drug organization described above. Affiant believes that RUIZ is working for the organization to arrange delivery of heroin to customers in the Dayton, Ohio area, to include the user of the 415-595-1276 cell phone. I know that this location information will assist law enforcement identify the user of the **Target Telephone**. Additionally, the location information may also lead law enforcement to locations at which the user of the **Target Telephone** is storing or selling illegal drugs. Additionally, this information will assist law enforcement observe potential meetings between the user of the **Target Telephone** and other individuals with whom he is trafficking narcotics, *i.e.*, coconspirators.

7. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides

relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

5. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available.

6. Based on my training and experience, I know that AT&T can collect cell-site data about the **Target Telephone**.

## AUTHORIZATION REQUEST

7. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

8. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified

because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

9. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Telephone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

10. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

11. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Jason Via
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on _____Nov 3_____, 2016.

_____
HONORABLE SHARON L. OVINGTON
CHIEF UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

### Property to Be Searched

1. A cellular telephones assigned call number, 937)238-9353, with International Mobile Subscriber Identity ("IMSI") 310150823650412 number hereinafter referred to as "**Target Telephone**," placed in the subscriber name of "Lizbeth Ruiz" with an address of 1625 Mack Avenue, Dayton, Ohio, and whose wireless service provider is AT&T, a company headquartered at South Palm Beach Garden, FL.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of AT&T.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of Target Telephone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of Target Telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Telephone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).